132 T.C. No. 17


UNITED STATES TAX COURT


COUNTRYSIDE LIMITED PARTNERSHIP, CLP HOLDINGS, INC., TAX MATTERS
PARTNER, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 3162-05, 22023-05,      Filed June 8, 2009.
          2176-08,  2178-08.


      R has moved to compel production of documents.  Ps
object, claiming that the documents are protected from
disclosure by, among other privileges, the so-called
federally authorized tax practitioner (FATP) privilege
described in sec. 7525(a), I.R.C.  We have determined
that the FATP privilege applies, subject to R's right
to show the privilege does not apply.  To do that, R
must show that the requested documents are written
communications in connection with the promotion of

---

     [1] Cases of the following petitioners are consolidated
herewith:  Countryside Limited Partnership, CLP Holdings, Inc.,
Tax Matters Partner, docket No. 22023-05; CLP Promisee L.L.C.,
WMC Realty Corp., Tax Matters Partner, docket No. 2176-08;
Manchester Promisee L.L.C., AMW Realty Corporation, Tax Matters
Partner, docket No. 2178-08.

corporate tax shelters and, thus, that the exception in sec. 7525(b), I.R.C., to the FATP privilege applies.

1.  Held:  Ps have the burden of proving the preliminary facts necessary to establish the FATP privilege; R has the burden of proving the preliminary facts necessary to establish the exception.

2.  Held, further, the meeting notes in question not communicated to anyone are not a written communication that can satisfy that element of the sec. 7525(b), I.R.C., exception.

3.  Held, further, the written minutes in question are not within the sec. 7525(b), I.R.C., exception because R failed to show that the FATP promoted a corporate tax shelter.

Richard A. Levine and Elliot Pisem, for petitioners.

Jill A. Frisch, for respondent.

OPINION

HALPERN, Judge:  These consolidated cases are partnership-level actions based on petitions filed pursuant to section 6226.[2] We have issued a report granting participating partner Arthur M. Winn's motion for partial summary judgment in docket No. 3162-05, Countryside Ltd. Pship. v. Commissioner, T.C. Memo. 2008-3. Respondent has by two similarly styled motions (Nos. 1 and 2, the motions) moved to compel production of documents in docket No. 3162-05.  Petitioners object to the motions, claiming that the

---

[2] All section references are to the Internal Revenue Code of 1986, as amended (the Code).

documents are protected from disclosure by either the attorney-client privilege or the so-called federally authorized tax practitioner (FATP) privilege described in section 7525(a). We have resolved by order all issues with respect to the motions except that, with respect to certain documents described infra, we have determined that the documents contain privileged communications, protected from disclosure by the FATP privilege, but subject to respondent's right to show that the exception to the FATP privilege in section 7525(b) applies.  Section 7525(b), as applicable to the privileged documents, provides that the FATP privilege does not apply to written communications in connection with promoting corporate participation in a tax shelter.  For the reasons stated infra, we determine that the documents here in question were not such communications.

## Background

The documents responsive to motion No. 1, a series of 16 documents all entitled "Estate Planning Meeting Minutes" (the minutes), constitute a cumulative chronicle of communications, in part confidential, from clients, including Countryside Limited Partnership (the partnership), to their attorneys for legal advice or to Timothy Egan (Mr. Egan), whom we have found to be an FATP, for tax advice, or from those individuals back to their clients.  The entries in the minutes begin March 28, 2001, and

end February 11, 2003.[3]  The document responsive to motion No. 2 is two pages of handwritten notes (the notes) made by Lawrence H. Curtis (Mr. Curtis), a member of the partnership, recording confidential communications regarding tax advice received during a meeting with, among others, Mr. Egan.

## Discussion

### I.  Section 7525

Section 7525(a)(1) provides a limited privilege, equivalent to the attorney-client privilege, to communications regarding tax advice between a taxpayer and any FATP.  Section 7525(b), as applicable to communications made before October 22, 2004,[4]

---

[3] The title "Estate Planning Meeting Minutes" is a misnomer, in that, by 2001, the meetings regularly involved a wide range of matters affecting various business entities, including many topics unrelated to estate planning.

[4] With respect to communications made after Oct. 21, 2004, sec. 7525(b) provides as follows:

> SEC. 7525(b).  Section Not To Apply to Communications Regarding Tax Shelters.--The privilege under subsection (a) shall not apply to any written communication which is--
>
>> (1) between a federally authorized tax practitioner and--
>>
>>> (A) any person,
>>>
>>> (B) any director, officer, employee, agent, or representative of the person, or
>>>
>>> (C) any other person holding a capital or profits interest in the person, and
>>>
>>> (continued...)

provides as follows:

> SEC. 7525(b). Section Not To Apply to Communications Regarding Corporate Tax Shelters.--The privilege under subsection (a) shall not apply to any written communication between a federally authorized tax practitioner and a director, shareholder, officer, or employee, agent, or representative of a corporation in connection with the promotion of the direct or indirect participation of such corporation in any tax shelter (as defined in section 6662(d)(2)(C)(iii)).

Petitioners have the burden of proving the preliminary facts necessary to establish the privilege; respondent has the burden of proving the preliminary facts necessary to establish the exception. See United States v. BDO Seidman, L.L.P., 492 F.3d 806, 821 (7th Cir. 2007). Petitioners have met their burden, and the question before us is whether respondent has met his burden.

II. Arguments of the Parties

Respondent argues that the section 7525(b) exception applies and that the minutes and notes do not embody privileged communications because

> the series of Countryside transactions that are the subject of this litigation[5] * * * are a "tax shelter"

---

4(...continued)
>     (2) in connection with the promotion of the direct or indirect participation of the person in any tax shelter (as defined in section 6662(d)(2)(C)(ii)).

5 In Countryside Ltd. Pship. v. Commissioner, T.C. Memo. 2008-3, under the heading "Facts on Which We Rely", we described much of the series of transactions that is the subject of this litigation. At the most general level, the series of transactions involves Federal tax questions associated with

(continued...)

as defined in section 6662(d)(2)(c)(iii) * * * and the documents withheld by Petitioners are in connection with the promotion of the participation of Petitioners' corporate general partners in the transactions.

Petitioners argue that the section 7525(b) exception does not apply because respondent has failed to provide evidence of several elements necessary to that provision's application: viz, (1) the <u>promotion</u> of (2) a <u>corporation's participation</u> in (3) any <u>tax shelter</u>, and, in the case of the notes, (4) a <u>written communication</u>.  Petitioners argue that respondent's failure to provide evidence that all the elements of section 7525(b) have been satisfied renders the provision inapplicable.

III.  <u>Analysis</u>

   A.  <u>Introduction</u>

We agree with petitioner that, for the FATP privilege not to apply because of the application of the section 7525(b) exception, respondent must produce evidence that all the elements of the exception are satisfied.  Cf. <u>United States v. BDO Seidman, L.L.P.</u>, <u>supra</u> at 821 ("[P]roponent of the tax practitioner privilege must establish each element".).

The elements of the section 7525(b) exception are not free of interpretative difficulties.  See, e.g., <u>id.</u> at 822-828 ("Scope of the Tax Shelter Exception"); <u>Valero Energy Corp. v.</u>

---

[5](...continued) distributions by the partnership in redemption of interests of its members.

United States, No. 06 C 6730 (N.D. Ill., Aug. 26, 2008) (corrected memorandum opinion and order) ("'Promotion' of tax shelter"). In no report have we addressed section 7525(b). In this report, we need go no further than to consider the elements of "promotion" and "written communication". We shall start with the latter. We shall in each case assume that respondent has shown that the other elements necessary for the application of the section 7525(b) exception have been satisfied, but we do so only to isolate the element we are considering.

B. Written Communication

As stated supra, the notes consist of two pages handwritten by Mr. Curtis recording confidential communications regarding tax advice received during a meeting with, among others, Mr. Egan. Respondent's argument that the notes are a written communication is succinct: "Written notes of oral communications are 'written communications' under any plausible construction." Petitioners' response is also succinct; i.e., the plain meaning of "written communications" requires some transmission of written material from one person to another. Petitioners state, and respondent does not contradict them, that Mr. Curtis did not share his notes with any other person.

We have examined the notes, and they are just that, notes; they are neither a verbatim record of an oral communication nor anything resembling that. They appear to be nothing more than

the holographic record of the salient points of a discussion.  We conclude that information was communicated to and perhaps by Mr. Curtis, but not, in this case, in writing.  The Court of Appeals for the Seventh Circuit said in United States v. BDO Seidman, L.L.P., supra at 827:  "Because the [section 7525(b)] exception is limited to written communications, oral communications between a tax practitioner and the corporate agent remain within the general rule of privilege."  Although the Court of Appeals was not addressing the question we address here concerning notes of an oral communication, we think the distinction that court drew is relevant to the question we face.  The notes were not communicated to anyone.  Therefore, they do not constitute a written communication that can satisfy that element of the section 7525(b) exception.  The FATP privilege accorded to the notes is not subject to the exception in section 7525(b).

C.  Promotion

Respondent argues:  "The * * * facts show that Mr. Egan was promoting the Countryside transactions."  In support of that claim, respondent alleges, among other things, that Mr. Egan played a "substantial role in structuring Countryside and similar transactions" and "was involved in organizing, structuring and assisting with respect to tax shelter transactions known as basis

swaps for Winn-controlled partnerships and corporations."[6]
Petitioners respond:  "Mr. Egan, a longstanding tax advisor to
Petitioners and to other members of the Winn Organization,
performed precisely the kind of one-on-one tax advice and
counseling that is the antithesis of a 'promotional'
relationship."

Petitioners support their claim with respect to Mr. Egan's
relationship to what we shall call "the Winn organization" with
excerpts from his deposition taken by respondent in these cases.
In those excerpts, Mr. Egan testifies to the following.  He began
his relationship with the Winn organization in 1982, when he was
a second-year staff accountant at an accounting firm asked to
review a tax return.  He is now a tax partner at
PricewaterhouseCoopers (PWC) servicing the Winn organization
account.  He prepares tax returns for the Winn organization
entities, the Winn family trusts, Mr. Winn himself, his family
members, and corporate general partners (generally S
corporations).  Presently, 70 percent of his work for the Winn
organization involves tax compliance (i.e., return preparation),
with the balance encompassing tax planning, answering questions,
and responding to notices and inquiries from Federal and State

---

[6] By the term "Winn-controlled partnerships and
corporations", respondent refers to various entities (including
the partnership) in which Arthur Winn and his associates held an
interest.

tax officials. The Winn organization is billed pursuant to engagement letters at a fixed fee for tax compliance work; for all other work, the organization is billed by the hour (hours expended times a rate, pursuant to a schedule provided to the organization). Winn organization personnel consult him with respect to the tax implications of the organization's real estate transactions. He provides tax advice with respect to both contemplated and completed transactions. He has telephone conversations with Winn organization personnel once or twice weekly and meets with them once or twice monthly. He provided tax advice on various alternatives that Winn organization personnel considered in connection with the partnership redemptions and associated transactions that are under review in these consolidated cases. He had previously made similar recommendations to the Winn organization in connection with similar transactions. Advising clients with respect to the tax aspects of partnership redemptions is a regular part of his practice, and he has been providing advice to clients (including the Winn organization) on that subject for his entire career. In formulating the advice here under examination, he applied knowledge as to the tax consequences of partnership redemptions that he believes are well known among partnership tax professionals. In formulating that advice, he did not rely on any generic prototypes, descriptive materials, or files

maintained by PWC.  He had recourse to tax specialists in the PWC national office in Washington, D.C., who help him understand complex provisions of the Internal Revenue Code and associated regulations, but he received from them no descriptive materials regarding the tax structure in issue here.

In pertinent part, section 7525(b) provides that there is no FATP privilege with respect to any "written communication * * * in connection with the promotion of * * * [corporate participation] in any tax shelter".  (Emphasis added.)  The term "promotion" is not defined in section 7525(b).  A commonly used dictionary contains alternative meanings, including "Encouragement of the progress, growth, or acceptance of something; furtherance" and "Advertising; publicity".  The American Heritage Dictionary of the English Language 1403 (4th ed. 2000).  The verb "promote" is alternatively defined to mean "To urge the adoption of" and "To attempt to sell or popularize by advertising or publicity".  Id.  Other courts considering the meaning of the term "promotion" in section 7525(b) have reached different answers.  Compare United States v. Textron Inc., 507 F. Supp. 2d 138, 148 (D.R.I. 2007) (the term applies to the peddling of prepackaged tax shelters) with Valero Energy Corp. v. United States, No. 06 C 6730 (N.D. Ill., Aug. 26, 2008) (corrected memorandum opinion and order) (the term applies "to a person who organizes or assists in organizing a tax shelter").  There

appears to be sufficient ambiguity in the meaning of the term that we are justified in looking to legislative history.[7]

Section 7525 was added to the Code by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3411(a), 112 Stat. 750.  Section 7525(b), as enacted in 1998, was added in conference between the House of Representatives and the Senate on the Senate's amendment to H.R. 2676, 105th Cong., 2d Sess. (1998), which was enacted as Pub. L. 105-206.  The conferees defined a tax shelter as "any partnership, entity, plan, or arrangement a significant purpose of which is the avoidance or evasion of income tax."  H. Conf. Rept. 105-599, at 269 (1998), 1998-3 C.B. 747, 1023.  They added: "The Conferees do not understand the promotion of tax shelters to be part of the routine relationship between a tax practitioner and a client.  Accordingly, the Conferees do not anticipate that the tax shelter limitation will adversely affect such routine relationships."  Id.

We are satisfied, in view of excerpts from respondent's deposition of Mr. Egan, the truth of which respondent does not

---

[7] "This Court's function in the interpretation of the Code is to construe the statutory language so as to give effect to the intent of Congress."  Merkel v. Commissioner, 109 T.C. 463, 468 (1997), affd. 192 F.3d 844 (9th Cir. 1999); see United States v. Am. Trucking Associations, 310 U.S. 534, 542 (1940).  "Where the statute is ambiguous, it is well established that we may look to its legislative history and to the reason for its enactment." Merkel v. Commissioner, supra at 468-469; see United States v. Am. Trucking Associations, supra at 543-544.

question, that Mr. Egan has had a long, close relationship with the Winn organization, preparing returns, assisting with tax planning when asked, answering questions when asked, and responding to notices and inquiries from Federal and State tax officials.  His advice with respect to the partnership redemptions and associated transactions under review in these cases was furnished (as was similar advice with respect to similar transactions) as part of a long-standing, ongoing, and, hence, routine relationship with the Winn organization.  Mr. Egan provided tax advice to the Winn organization when requested to do so, and his advice here followed the same regular course of procedure as did his other tax advice, including tax advice related to partnership redemptions.  His employer, PWC, had no stake in the outcome of the transactions under review in this case other than in the continued retention of the Winn organization as a client.  It did not receive a fixed fee or a fee based on a percentage of some claimed tax saving.  It was paid by the hour pursuant to a rate schedule for Mr. Egan's time in rendering his advice, just as it was for the other services outside of return preparation that he rendered to the Winn organization.

Respondent has focused on Mr. Egan as "promoting the Countryside transactions."  We read the conferees' statements quoted above as distinguishing tax advice given in the course of

a relationship such as that between Mr. Egan and the Winn organization from the "promotion" of a client's participation in a tax shelter. There may be a point at which an FATP's actions cross the line, and will no longer be encompassed within the routine relationship between an FATP and his client and will amount to tax shelter promotion. Respondent has, however, failed to show us that Mr. Egan's communications with the Winn organization with respect to the partnership redemptions and associated transactions before us crossed that line. He rendered advice when asked for it; he counseled within his field of expertise; his tenure as an adviser to the Winn organization was long; and he retained no stake in his advice beyond his employer's right to bill hourly for his time. Respondent has failed to show us that he crossed the line from trusted adviser to promoter.[8]

---

[8] Sec. 6111(d) provides that confidential corporate tax shelters are subject to the tax shelter registration rules of sec. 6111. A confidential corporate tax shelter is a transaction for which, among other things, the tax shelter promoters may receive fees in excess of $100,000. Sec. 6111(d)(1)(C). For purposes of sec. 6111(d), the term "promoter" is defined as a person "who participates in the organization, management, or sale of the tax shelter." Sec. 6111(d)(2). While in 1998, in sec. 7525(b), Congress cross-referenced sec. 6662(d)(2)(C)(iii), now (ii), for the definition of the term "tax shelter" applicable to sec. 7525(b), neither in sec. 7525(b) nor in the conference committee report did Congress cross-reference sec. 6111(d)(2) with respect to the meaning of the term "promotion" in sec. 7525(b). We draw no inference as to the meaning of the term "promotion" in sec. 7525(b) from the particularized meaning of the term "promoter" in sec. 6111(d)(2). For the same reason, we
(continued...)

Because Mr. Egan was not a promoter with respect to the Countryside transactions, communications between Mr. Egan and the Winn organization, including the minutes at issue in motion No. 2, remain privileged.

IV. <u>Conclusion</u>

On the premises stated, we will deny the motions.

<u>An appropriate order will be</u>

<u>issued in docket No. 3162-05</u>.

---

[8](...continued)
draw no inference as to the meaning of that term from the description in sec. 6700(a) of persons promoting abusive tax shelters.